S

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN VILLALI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHEP SERVICES, LLC, formerly known as CHEP RECYCLED PALLET SOLUTIONS, LLC; KENNETH BARNER; and DOES 1 through 50,<br><br>　　　　　Defendants. | Case No.: 1:20-cv-1537 JLT BAK (SAB)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 5) |

Melvin Villali asserts that he was employed by Chep Services, LLC, and his employment was wrongfully terminated without an investigation. He seeks to hold Chep Services and Kenneth Barner liable for the termination, failure to investigate, violations of California's Unfair Competition Law, and penalties under PAGA. In addition, Villali seeks to hold Chep liable for breaching an oral contract related to his continued employment with the company. (*See* Doc. 1-1 at 5-18.)

Defendants seek dismissal of claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting the allegations are insufficient to support Villali's claims. (Doc. 5.) Villali opposes the motion, asserting the facts alleged are sufficient. (Doc. 6.) The Court found the matter suitable for decision without oral argument, and the motion remains under submission pursuant to Local Rule 230(g). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

///

1

**I.      Background and Plaintiff's Allegations**

Villali reports he was an at-will employee for Chep Services—formerly known as Chep Recycled Pallet Solutions, LLC—from July 20, 2017 to August 2, 2019.  (Doc. 1-1 at 8, ¶¶ 15; *id.* at 16, ¶ 49.)  Villali asserts he worked as a site supervisor for Chep, which is a full-service pallet manufacturing and sales company.  (*Id.*)  Villali alleges that defendant Kenneth Barner "serv[ed] as an officer, agent, servant, and/or employee of Chep."  (*Id.* at 6, ¶ 2.)  He also asserts "Barner was the Southern District Manager of Chep."  (*Id.* at 7, ¶ 12.)

He alleges that he "suffered from severe knee pains while on the job," but "reported to Barner and Chep that … did not prevent him from doing his job."  (Doc. 1-1 at 10, ¶ 24.)  Villali reports that "[d]espite his assurances, Barner demanded that Villali show him his knees," and Barner stated "that must hurt" upon seeing a scar.  (*Id.*)  In addition, Villali asserts that a supervisor named Mark accused him "of not doing his work, lying about his pallet totals, and made fun of his knee problems, calling him a 'cripple.'"  (*Id.*)  On October 19, 2017, Villali attended a meeting with the supervisor and Barner, during which the supervisor said, "if he knew Villali was a 'cripple,' he would not have hired him."  (*Id.*, ¶ 25.)  According to Villali, "Barner did nothing to help" after the meeting, and "Villali was forced to complain to Chep's Human Resources Department."  (*Id.*)

In addition, Villali asserts that while an employee of Chep, he was "[s]ubjected to verbal abuse, yelling, the use of racial slurs and obscenities."  (Doc. 1-1 at 8, ¶ 15.)  He alleges the incidents "occurred in front of third parties," which did not include the defendants.  (*Id.*)  Villali contends that in early 2018, he "complained to Barner about the Dollar General Director Alex yelling at him, using racial slurs and obscenities, and engaging in harassment of him in front of Dollar General and Chep employees at the Dollar General warehouse."  (*Id.* at 9-10, ¶ 22.)

In August 2018, Villali learned that he had Valley Fever.  (Doc. 1-1 at 10, ¶ 23.)  Villali asserts that after he was diagnosed, he "was directed by Barner and Chep to work the following Monday despite the fact that he had a temperature of 100 degrees," and he continued to have a fever for approximately two weeks at work.  (*Id.*)  He alleges he "asked Barner and Chep for more time off," but he was told "there was no one else to cover his duties" and the request was denied.  (*Id.*)  Villali reports his "heath problems with the Fever continued until June 2019, yet he was forced to continue to work

2

full time . . ."  (*Id.*)

In June 2019, Villali "filed a second complaint regarding use of obscenities and harassment by a Dollar General maintenance manager in front of [him] and other employees."  (Doc. 1-1 at 8, ¶ 15.) He contends "Chep and Barner did nothing," but "Villali subsequently obtained a State of California Disability Rehabilitation Order to address the obscenities and harassment" by the Dollar General employees.  (*Id.* at 10, ¶ 22; *see also id.* at 8, ¶ 15.)

In July 2019, "Barnier and his new boss, David Lee visited Villali to check on his progress." (Doc. 1-1 at 8, ¶ 18.)  Villali asserts that "[h]e was told that his performance was consistent with Chep's expectations."  (*Id.* at 8-9.)  He contends that about two weeks later, Barner visited Villali again, "this time to check his folder and computer," and Barner told Villali there were "no issues with his performance, and …that Chep was happy with him."  (*Id.* at 9, ¶ 18.).

On August 1, 2019, "Barner returned and demanded that Villali surrender his cell phone." (Doc. 1-1 at 9, ¶ 19.)  Villali asserts that Barner also "demanded that Villali accompany him to a conference room where he was informed that a representative of Chep's Human Resources Department wished to speak to him."  (*Id.*)  He alleges the HR "representative asked Villali various questions regarding that he allegedly sent pornographic material to another employment," and "Villali vehemently denied the accusation."  (*Id.*)  According to Villali, he "invited Barner and the HR representative to inspect his cell phone," and "[t]he HR representative promised Villali that he would return [the] cell phone as soon as possible, so he could get back to work."  (*Id.*)  Villali alleges the HR representative also asked "if he had ever followed [another] Chep employee, Jonathan Banuelos[,] to the restroom, 'before today.'"  (*Id.*)  Villali asserts he responded that he "never followed any man to the restroom," and "pointed out that the office in which he worked and visited quite often was thirty (30) feet from the restroom."  (*Id.*)

Villali asserts that, the following day, "Barner and Manual Rizo met with Villali and told him that he was being terminated, notwithstanding the fact that he had never received any form of a reprimand or 'write up' for any violation during his employment with Chep."  (Doc. 1-1 at 9, ¶ 20.) He alleges that Barner and Rizo "ignored [him] and escorted him from the building."  (*Id.*)  According to Villali, he "asked if he was being terminated because of his knee or any other reason," and "Barner

assured him that he was not being terminated for any reason." (*Id.*)  He contends "Barner and Manuel Rizo never provided Villali with any reason or explanation for his termination." (*Id.* at 11, ¶ 24.)

Villali alleges he was paid of $17.59 per hour and "[p]rior to his termination, his hourly wage was approved to be raised to $20.00 per hour." (Doc. 1-1 at 8, ¶¶ 16-17.)  He reports the increase was never received. (*Id.*, ¶ 17.)  Villali asserts that "Barner and Chep terminated his employment with Chep because of his prior complaints against the subject Dollar General employees." (*Id.* at 10, ¶ 22.) Further, Villali contends "Barner and Chep also terminated his employment because of his medical condition." (*Id.* at 11, ¶ 25.)

On June 22, 2020, Villali filed a complaint against Chep and Barner in Kern County Superior Court, Case No. BCV-20-101417.  (Doc. 1-1 at 5.)  Villali alleges: (1) wrongful termination in violation of public policy, (2) breach of oral contract, (3) unlawful business practices, (4) failure to conduct an investigation, and (5) a violation of California's Private Attorney General Act.  (*Id.* at 5, 12-17.)  Defendants filed a Notice of Removal on October 29, 2020, thereby initiating the matter before this Court.  (Doc. 1)

On November 5, 2020, Defendants filed the motion to dismiss now pending before the Court. (Doc. 5.)  Villali filed his opposition to the motion on November 24, 2020 (Doc. 6), to which Defendants filed a reply on December 1, 2020 (Doc. 6).[1]

## II.    Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court held: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[1] As the parties were informed on September 22, 2020, the Eastern District of California is in a state of judicial emergency, including while this motion was pending resolution, which caused a significant backlog of pending matters. (*See* Doc. 2-3.) The action was assigned to the undersigned in 2022. (*See* Doc. 16.)

1   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

2   Court explained,

> 3   A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the misconduct
> 4   alleged. The plausibility standard is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has acted unlawfully. Where a
> 5   complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of 'entitlement to relief.'"

6

7   *Iqbal*, 556 U.S. at 678 (internal citations omitted).

8       Allegations of a complaint must be accepted as true when the Court considers a motion to

9   dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  A court must construe

10  the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff.

11  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, legal conclusions need not be taken as true

12  when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

13       "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled

14  to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a

15  recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236

16  (1974).  The Court "will dismiss any claim that, even when construed in the light most favorable to

17  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

18  *Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  To the extent that the pleadings can be cured

19  by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss and Liehe,*

20  *Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

21  **III.     Discussion and Analysis**

22       Defendants seek dismissal of all claims, asserting "the Complaint fails to state a claim upon

23  which relief can be granted within the meaning of Fed. R. Civ. P. 12(b)(6)."  (Doc. 5 at 2.)  Villali

24  contends the facts alleged are sufficient to support his claims but seeks leave to amend if the Court

25  finds the motion should be granted.  (*See* Doc. 6 at 3-5.)

26       **A.     First Cause of Action: Wrongful Termination**

27       Villali seeks to hold Barner and Chep liable for wrongful termination in violation of public

28  policy.  (Doc. 1-1 at 12-13.) The authority of an employer to terminate at-will employees is broad, but

1  "can be limited by statute or considerations of public policy." *Ortiz v. Lopez*, 688 F.Supp. 1072, 1078-

2  79 (E.D. Cal. 2010), citing *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980). "When an

3  employer's discharge of an employee violates fundamental principles of public policy, the discharged

4  employee may maintain a tort action against the employer." *Id.*

5         To state a claim for wrongful termination in violation of public policy, a plaintiff must allege:

6  "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3)

7  the termination was substantially motivated by a violation of public policy, and (4) the discharge

8  caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014); *see*

9  *also Bowman v. Adams & Assocs.*, 2022 WL 624882, at *6 (E.D. Cal. Mar. 2, 2022) (citing *Yau* in

10  identifying the elements of a claim for wrongful termination in violation of public policy).  The public

11  policy implicated must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in

12  the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the

13  individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Freund*

14  *v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) (quoting *City of Moorpark v. Super. Ct.*, 18

15  Cal. 4th 1143, 1159 (1998)).

16         Defendants argue Villali fails to state a claim for wrongful termination against Barner because

17  he did not "plead facts necessary to establish an employment relationship between [Villali] and

18  Barner." (Doc 5 at 2.)  Defendants acknowledge that Villali alleged "defendant Barner 'meets the

19  definition of an 'employer' within the Government Code §§ 12926(d) and 12940(a), (h), (G)(4)(a) and

20  (k).'"  (*Id.* at 9, citing Doc. 1-1 at 6, ¶ 2.)  However, Defendants maintain Villali did not allege any

21  facts to support this conclusion, and such "[c]onclusory allegations are insufficient to state a cause of

22  action…."  (*Id.*, citing *Ashcroft*, 556 U.S. at 678-79.)  Further, Defendants argue Villali's "allegations

23  within his Complaint either do not support, or are inconsistent with, his assertion that defendant Barner

24  was his employer" because:

25         In paragraph 12 of his Complaint, Plaintiff refers to defendant Barner as "the
           Southern District Manager of Chep." In paragraphs 15, 16 and 52 of his
26         Complaint, Plaintiff alleges that he "was employed by Chep," and he does not
           allege co-employment by Barner. In paragraph 22, Plaintiff alleges the defendants
27         "terminated his employment with Chep."[] In addition, within the section of his
           Complaint in which he purports to plead this cause of action for wrongful
28         termination, Plaintiff alleges, "Chep's response was to terminate [Villali]."
           (Complaint ¶31). Notably absent is an allegation that Barner terminated Plaintiff.

(Doc. 5 at 9-10, footnote omitted.)  Thus, Defendants argue Villali fails to state a claim for wrongful termination against Barner.  (*Id.*)  Defendants maintain "the claim is only cognizable" against Chep.  (*Id.* at 9, citing *Williams v. Boston Scientific Corp.*, 2008 WL 2051021, at *2 (N.D. Cal. May 13, 2008) ["individuals cannot be sued for wrongful termination in violation of public policy under California case law"].)

Villali does not directly address Defendants' argument that the allegations in the complaint are insufficient to support a conclusion that Barner was Villali's employer.  Instead, Villali asserts that he "clearly alleges sufficient facts to constitute a cause of action … against Barner."  (Doc. 6 at 4.)  According to Villali,

> Along with the considerable amount of material facts alleged in the "GENERAL," "THE PARTIES," "JURISDICTION & VENUE," "FACTUAL PRESENTATION" AND "LEGAL ALLEGATIONS" sections of the Complaint (Pages 1 through 8) and the additional material facts alleged in the paragraphs in the subject causes of action against Barner, Plaintiff more than provides Barner with notice of his claims against him without question, addressing all factors, including who, what, when where, why and how in this matter.

(*Id.*)  He also notes that in Paragraph 2 of the complaint, he alleges Barner "was an individual serving as an officer, agent, servant, and/or employee of Chep.  Barner meets the definition of an 'employer' within the meaning of Government Code§§ 12926(d) and 12940(a), (h), (G) (4) (A) and (k) and was subject to the provisions of the California Fair Employment and Housing Act, Government Code §§12900, et. Seq., in that Chep regularly employed five or more persons."  (*See* Doc. 6 at 5, Doc. 1-1 at 6, ¶ 2.)

As noted above, a plaintiff must allege: "an employer-employee relationship" for a claim of wrongful termination.  *Yau*, 229 Cal. App. 4th at 154; *Bowman*, 2022 WL 624882 at *6.  It is well-established under California law that, because only an employer can discharge an employee, a plaintiff may sue only an employer for wrongful termination.  *Weinbaum v. Goldfarb, Whitman & Cohen*, 46 Cal. App. 4th 1310, 1315 (1996).  Consequently, a supervisor cannot be held individually liable for wrongful termination in violation of public policy.  *See Reno v. Baird*, 18 Cal. 4th 640, 663 (1998); *see also Anderson v. Penninsula Fire Dist.*, 2014 WL 1400950 at *4 (E.D. Cal. Apr. 8, 2014) (dismissing a claim for wrongful termination in violation of public policy to the extent it was raised against individual defendants because the claim "lies only against [the] employer, … not against the

1    supervisor through whom the employer commits the tort"); *Grigg v. Griffith Co*., 2013 WL 5754986 at

2    *3 (E.D. Cal. Oct. 23, 2013) (dismissing a claim against the plaintiff's supervisor for wrongful

3    termination in violation of public policy with prejudice); *Joyce v. Walgreen Co.*, 2007 WL 2088461 at

4    *2 (E.D. Cal. July 17, 2007) ("claims of wrongful termination in violation of public policy must be

5    brought against an employer, as opposed to a manager or supervisor").

6        Although Villali alleges that "Barner meets the definition of an 'employer'" (Doc. 1-1 at 6, ¶ 2),

7    the facts alleged do not support this conclusion.  The facts alleged support the conclusion that Barner

8    held a supervisor role, as Villali acknowledges Barner held the position of "the Southern District

9    Manager of Chep."  (*Id.* at 7, ¶ 12.)  In addition, Villali clearly stated he "was employed by Chep," and

10   "his employment with Chep" was terminated, thereby indicating the company was his sole employer.

11   (*Id.* at 8, ¶¶ 15, 16; *id.* at 10, ¶ 22.)  Because there are no facts alleged supporting a conclusion that

12   Barner was Villali's employer—and the claim may be stated only against his employer—Villali failed

13   to state a cognizable claim against Barner.  *See Anderson*, 2014 WL 1400950 at *4; *Joyce*, 2007 WL

14   2088461 at *2.  Accordingly, the motion to dismiss the first cause of action, to the extent it is stated

15   against Barner, is **GRANTED**.

16       **B.    Second Cause of Action: Breach of Oral Contract**

17       Villali seeks to hold Chep liable for breach of an oral contract.  (Doc. 1-1 at 13-14.)  Under

18   California law, the elements for breach of oral contract are identical to those for breach of written

19   contract.  *See Francois & Co., LLC v. Nadeau*, 334 F.R.D. 588, 597-98 (C.D. Cal. 2020).  Thus, to

20   state a claim for breach of oral contract, a plaintiff must allege: "(1) the existence of a contract; (2)

21   performance by the plaintiff; (3) breach by the defendant; and (4) damage resulting from the breach."

22   *Alcalde v. NAC Real Estate Invs. & Assignments, Inc*., 316 Fed. App'x 661, 662 (9th Cir. 2009)

23   (citation omitted); *see also Haberbush v. Clark Oil Trading Co*., 33 Fed. App'x 896, 898 (9th Cir.

24   2002) (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and

25   damages" as elements to a breach of contract).

26       Defendants contend that Villali "fails to state a claim for breach of contract because his

27   allegations do not establish an actual breach of the purported contract."  (Doc. 5 at 10, citing *Pellerin*

28   *v. Honeywell Intern., Inc*., 877 F.Supp.2d 983, 990 (S.D. Cal. 2018).)  Defendants note that "[t]he

8

substance of the contract alleged in paragraph 37 is that CHEP will continue to employ [Villali] if he complies with CHEP's rules." (*Id.*)  Defendants argue that Villali "does not allege an actual violation of the contract terms identified in paragraph 37." (*Id.*)  Defendants note that Villali does not assert the alleged contract required "proof of or an investigation into Plaintiff's misconduct prior to termination of Plaintiff's employment." (*Id.*)

Villali does not specifically address the sufficiency of his claim for breach of contract in his opposition to the motion to dismiss.  (*See generally* Doc. 6.)  Nevertheless, Villali maintains that he "clearly alleges sufficient facts to constitute a cause of action for all of his causes of action against Chep …." (*Id.* at 3.)

Notably, Villali does not allege more than he had an "at-will" agreement with Chep and alleges very little information related to the alleged oral employment contract.  (Doc. 1-1 at 15, ¶ 49.)  Villali asserts that he and Chep "orally agreed that he would continue to work for Chep and that he would and did comply with Chep's various rules and regulations" on July 20, 2017.  (*Id.* at 14, ¶ 37.)  In addition, Villali contends "Chep breached the oral agreement by terminating Villali for allegedly sending porn to another Chep employee without proof nor without an investigation." (*Id.*, ¶ 38.)  However, Villali does not allege additional terms of the oral contract he entered with Chep, such that the company agreed to not terminate his employment without an investigation or good cause.  Villali also does not identify the relevant "rules and regulations" with which he complied, such that the Court may find he satisfied his obligations under the contract.  Without such allegations, Villali's claim for a breach of contract is not cognizable.  *See, e.g., Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 675 n.20 (1988) ("Plaintiff alleges defendant maintained written 'Guidelines for Termination' that required good cause for discharge of an employee, and that plaintiff understood these guidelines applied to him. If he had further alleged that the parties expressly agreed that these guidelines governed his employment, he could state a cause of action for breach of an express oral contract. He has made no such allegation."); *see also Salsgiver v. America OnLine, Inc.*, 147 F.Supp.2d 1022, 1028 (CD. Cal. 2000) (finding a claim for breach of an employment contract failed where the plaintiff "made no allegation that Defendant ever, either orally or in writing, explicitly stated that it would not terminate him except for cause").  Therefore, Defendants' motion to dismiss the second cause of action is **GRANTED**.

**C.      Third Cause of Action: Violation of Cal. Bus. & Prof. Code §§ 17200, et seq.**

Villali seeks to hold both Barner and Chep liable for violating California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, *et seq.*  (Doc. 1-1 at 14-15.)  Under Section 17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under Section 17200.  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition"); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong … is a separate and distinct theory of liability").  Given the disjunctive nature of the prongs, an action may be unfair even if it is not unlawful.  *Cel-Tech Communications., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999).  In the complaint, Villali indicated the cause of action was for "unlawful busines practices."  (Doc. 1-1 at 14.)  His allegations also refer to "unfair business practices" and he asserts the defendants "committed the acts alleged… maliciously, fraudulently, and oppressively."  (*Id.* at 14-15, ¶¶ 43-46.)  Thus, the Court addresses the sufficiency of the pleadings for claims under the three prongs.

### 1.      Claim against Barner

As an initial matter, Defendants argue the claim against Barner fails because "[l]iability under Business & Professions Code § 17200 et seq. … can apply only to a person or entity engaged in business, and there are no factual allegations that would support the conclusion that Barner engaged in business."  (Doc. 5 at 12.)  In addition, Defendants contend Villali "fails to state a claim against Barner under the UCL because this claim is entirely derivative of Plaintiff's other claims, which all fail to state a claim against Barner."  (*Id.* at 13

"Persons" who may be held liable under the UCL "include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."  Cal. Lab. Code § 17201.  A defendant's liability under the UCL "must be based on his personal participation in the unlawful practices *and* unbridled control over the practices that are found to violate section[] 17200 …."  *Hasibullah Abdali v. Agiliti Surgical, Inc.*, 2020 WL 5642355 at *2 (E.D. Cal. Sept. 21, 2020) (quoting *Emery v. Visa Internat. Service Assoc.*, 95 Cal. App. 4th 952, 960 (2002) [emphasis added].)

10

1   Further, the California Supreme Court held that restitution is the only monetary remedy expressly

2   authorized by Section 17200.  *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1145-46

3   (2003).  As a result, "[t]he only possible Section 17200 remedy that plaintiff could seek is from his

4   employer, not his supervisor."  *Mohammed v. American Airlines, Inc*., 2019 WL 3577160 at *5 (N.D.

5   Cal. Aug. 6, 2019).

6          As discussed above, the allegations in the complaint support a conclusion that Barner was a

7   supervisory employee of Chep.  Consequently, there is no monetary remedy Villali could seek from

8   Barner under Section 17200.  *See Mohammed*, 2019 WL 3577160 at *5.  Moreover, Villali fails to

9   allege facts that support a conclusion that Barner was "engaged in business"—such that he had

10  "unbridled control over the practices" of Chep—and could be held liable under Section 17200.  *See*

11  Cal. Lab. Code § 17201; *Hasibullah Abdali*, 2020 WL 5642355 at *2.  Therefore, Defendants' motion

12  to dismiss the claim under Section 17200, as stated against Barner, is **GRANTED**.

13                          2.        Unlawful practices

14         The business acts proscribed under the "unlawful" prong of Section 17200 includes "anything

15  that can properly be called a business practice and that at the same time is forbidden by law."  *Farmers*

16  *Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quoting *Barquis v. Merchants Collection*

17  *Assoc.*, 7 Cal.3d 94, 113 (1972)).  In essence, the UCL "borrows violations of other laws and treats

18  them as unlawful practices independently actionable under Section 17200."  *Saunders v. Superior*

19  *Court*, 27 Cal. App. 4th 832, 839 (1994) (internal quotation marks, citation omitted).

20         "To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate

21  violation, and (2) an accompanying economic injury caused by the violation."  *Aerojet Rocketdyne,*

22  *Inc. v. Global Aero., Inc*., 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) (citation omitted); *see*

23  *also Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007) ("a violation

24  of another law is a predicate for stating a cause of action under the UCL's unlawful prong").  Predicate

25  violations include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal,

26  statutory, regulatory, or court-made."  *Saunders*, 27 Cal. App. 4th at 838-39.

27         Importantly, a plaintiff must allege facts to support any alleged predicate violations of state and

28  federal law.  *See Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007).

1    For example, if a plaintiff alleges facts sufficient to support claims of violations of the FLSA and

2    California Labor Code, the federal and state statues are proper predicate violations under the UCL.

3    *See, e.g., Duarte v. Mzr Inc.*, 2010 WL 11586755, at *7 (N.D. Cal. July 8, 2010) (finding where the

4    plaintiff "allege[d] several violations of federal and state labor statutes, including the Fair Labor

5    Standards Act and California Labor Code …, [the statutory claims] may serve as predicate violations

6    under the 'unlawful' prong of the UCL").  Conversely, if a plaintiff fails to state a claim under the

7    "borrowed" law, it cannot support the UCL claim.  *Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d

8    983, 992 (S.D. Cal. 2012) (a claim under the UCL "must be dismissed if the plaintiff has not stated a

9    claim for the predicate acts upon which he bases the claim").

10         Defendants contend the claim under the UCL fails because there are no allegations that

11   "Defendants obtained money or property unlawfully from Plaintiff."  (Doc. 5 at 12.)  Indeed, to the

12   extent Villali seeks to state a claim under the "unlawful prong," he did not identify the predicate

13   violations upon which the claim may be based in the complaint.  (Doc. 1-1 at 14-15.)  Villali merely

14   alleges the defendants acted "in violation of the California laws mentioned in the foregoing

15   paragraphs…."  (Doc. 1-1 at 14, ¶ 44.)  This bare assertion is insufficient, because a plaintiff alleging a

16   UCL claim "must state with reasonable particularity the facts supporting the statutory elements of the

17   violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993).  A plaintiff must

18   allege and identify some state, federal, or local law as the predicate violation for recovery.  *See, e.g.,*

19   *Leonel v. American Airlines, Inc*., 400 F.3d 702, 714-15 (9th Cir. 2005); *People ex rel. Bill Lockyer v.*

20   *Fremont Life Ins. Co*., 104 Cal. App. 4th 508, 128 Cal. Rptr. 2d 463 (2002).  Thus, the Court declines

21   to speculate as to which claims—or provisions of law— Villali believes are predicate violations.[2]

22   Given the scarcity of the pleadings, Villali fails to support his claim for a violation of Section 17200

23   under the unlawful prong.

24              3.      Fraudulent practices

25         A "fraudulent" act is "one which is likely to deceive the public," and "may be based on

26   misrepresentations … which are untrue, and also those which may be accurate on some level, but will

27

28   [2] Notably, the Ninth Circuit determined "a common law violation such as breach of contract is insufficient" to support a
     claim under the unlawful prong.  Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1044 (9th Cir. 2010).

nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1474. Thus, the word "fraudulent" under Section 17200 "does not refer to the common law tort of fraud," *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008), but still requires allegations that the misrepresentation was directly related to injurious conduct, and that the claimant actually relied on the alleged misrepresentation. *In re Tobacco II Cases*, 46 Cal.4th 298, 336-37 (2009). Further, claims based upon the "fraudulent" prong are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).

Although Villali asserts that "Chep and Barner commented the acts alleged…maliciously, fraudulently, and oppressively" (Doc. 1-1 at 15, ¶ 46), he does not identify any specific misrepresentation made by the defendants, or assert he relied upon the misrepresentation. The allegations fail to comply with Rule 8, let alone satisfy the heightened pleading requirements of Rule 9. Because Villali fail to plead the circumstances surrounding the alleged fraud with particularity, the UCL claim is not cognizable to the extent it is based upon the "fraudulent" acts prong.

### 4.     Unfair practices

Recently, courts observed that what constitutes "unfair" practices under the UCL is unsettled. *See, e.g., Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214-15 (9th Cir 2020) (identifying various tests established to evaluate the prong); *see also Obertman v. Electrolux Home Care Prods.*, 482 F. Supp 3d 1017, 1027 (E.D. Cal. 2020) ("[t]here is some confusion in the law over the applicable test for 'unfair' conduct"); *In re Zoom Video Communs. Privacy Litig.*, 535 F.Supp.3d, 1047 (N.D. Cal. 2021) ("the proper definition of unfair conduct … is currently in flux among California courts" [internal quotation marks omitted]). The Ninth Circuit observed there are currently three tests for unfair practices:

> [C]ourts consider either: (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366, 108 Cal. Rptr. 3d 682 (2010)); (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254, 99 Cal. Rptr. 3d 768 (2009); or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Id.*

*Doe,* 982 F.3d at 1215. Nevertheless, the "traditional test for a consumer claim" is the second

1    identified, which this Court has consistently applied to evaluate claims for unfair practices.  *See*

2    *Obertman*, 482 F. Supp. 3d at 1017.

3          Villali seems to rely upon the tests identified in *Durrell* and *Morgan*, asserting the conduct of

4    Defendants "violates the policy or spirit of [the] laws" and Defendants acted "intentionally,

5    oppressively, and maliciously toward Valli with a conscious disregard of his rights…." (*See* Doc. 1-1

6    at 14-15, ¶¶ 44-47.)  However, Villali does not allege any *facts* to support the claim and seems to

7    simply paraphrase the tests identified by the courts.  *Compare with McKell v. Washington Mutual,*

8    *Inc.,* 142 Cal. App. 4th 1457, 1473 (2006) ("A business practice is unfair within the meaning of the

9    UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous

10   and causes injury to consumers which outweighs its benefits"). Given the lack of factual allegations,

11   Plaintiffs fail to state a claim under this prong.  *See Teton Global Invs. LLC v. LC Inv. 2010,* 2021 WL

12   5861565, at *3 (S.D. Cal. Aug. 11, 2021) ("specific facts must be pled to support a theory of an unfair

13   business practice").

14                        5.        Remedies under UCL

15         Defendants argue the cause of action also fails because "there is no allegation that Defendants

16   obtained money or property unlawfully from Plaintiff."  (Doc. 5 at 12.)  Defendants observe that the

17   UCL "authorizes only equitable relief to remedy acts of unfair competition."  (*Id.*, citing *Korea Supply*

18   *Co.*, 29 Cal. 4th at 1145-46.)  Defendants contend Villali cannot obtain the remedy of restitution

19   because "[t]he gravamen of his claims is that defendant [Chep] wrongfully terminated his employment

20   violation of California law," and he "cannot identify any sums of money wrongfully taken."  (*Id.*)

21   Defendants conclude: "As Plaintiff has no remedy under the UCL because he does not plead facts that

22   could entitle him to restitution, he has failed to plead a cognizable claim."  (*Id.* at 13.)  Villali does not

23   address Defendants' arguments concerning restitution.  (*See generally* Doc. 6 at 3-4.)

24         The California Supreme Court observed that because "[a] UCL action is equitable in nature;

25   damages cannot be recovered."  *Korea Supply Co.*, 29 Cal.4th at 1143.  "[R]emedies for individuals

26   under the UCL are restricted to injunctive relief and restitution."  *Walker v. Geico Gen. Ins. Co.*, 558

27   F.3d 1025, 1027 (9th Cir. 2009) (quoting *Buckland v. Threshold Enters. Ltd.*, 155 Cal. App. 4th 798,

28   817, (2007)); *see also Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 179.  Injunctive relief is available if the

1    alleged wrongful conduct is ongoing or likely to recur. *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th

2    983, 1015 (2010). On the other hand, a plaintiff may seek restitution if "the defendant is in possession

3    of money or property taken from [him or] her," or money for which the plaintiff has an ownership

4    interest. *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013). "The

5    object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she

6    has an ownership interest." *Korea Supply Co.*, 29 Cal.4th at 1149. Failure to allege facts sufficient to

7    support either injunctive relief or restitution requires dismissal of a UCL claim. *See Walker*, 558 F.3d

8    at 1027.

9        Villali has not alleged facts to support any claim for injunctive relief under the UCL, as he is

10   not a current employee of Chep. *See, e.g., Perez v. Leprino Foods Co*., 2018 WL 1426561 at *6 (E.D.

11   Cal. Mar. 22, 2018) (dismissing a demand for injunctive relief because "it is well-settled that former

12   employees lack standing to seek injunctive relief to ensure their former employers compliance with the

13   California Labor Code") (internal quotation omitted); *Ahmed v. Western Refining Retail, LLC*, 2021

14   WL 2548958 at *7 (C.D. Cal. May 13, 2021) (dismissing a request for injunctive relief under the UCL

15   because the plaintiff, a former employee, failed to establish a "personal need for prospective injunctive

16   relief"). Further, the facts alleged do not support a conclusion that Chep is possession of money or

17   property taken from Villali—or funds that Villali has an ownership interest in—based simply upon

18   wages not earned following the alleged wrongful termination. *See Scott v. Gate Gourmet, Inc.*, 2021

19   (C.D. Cal. Feb. 22, 2021) (observing that "a claim for compensation for loss of future, as yet unearned,

20   wages is a claim for 'monetary damages' that is not recoverable under the UCL," and dismissing the

21   UCL claim); *see also Voris v. Lampert*, 7 Cal. 5th 1141, 1154 n. 9 (2019).

22       Given the lack of allegations addressing the UCL claim, and Villali's failure to allege facts

23   sufficient to support a conclusion that he is entitled to injunctive relief or restitution under the UCL,

24   Defendants' motion to dismiss the third cause of action is **GRANTED**.

25       **D.    Fourth Cause of Action: Failure to Investigate**

26       Villali seeks to hold Barner and Chep liable for "failure to investigate" in violation of Cal. Bus.

27   & Prof. Code § 7520. (Doc. 1-1 at 15.) Defendants contend this cause of action should be dismissed

28   because Section 7520 "does not authorize a private right of action for failure to investigate." (Doc. 5

at 13-14.)  Defendants contend Section 7520 "neither imposes a legal obligation on an employer or other person to investigate certain matters nor authorizes a private right of action for an alleged failure to investigate," and the legal theory is not cognizable."  (*Id.* at 14.)  Thus, Defendants contend the claim should be dismissed without leave to amend.  (*Id.*)

In the opposition to the motion to dismiss, Villali asserts that he "alleges sufficient facts to constitute a cause of action for all his causes of action against Chep … except for his Fourth Cause of Action for Failure to Conduct an Investigation which truly should be part of his other … causes of action against Chep."  (Doc. 6 at 3.)  Based upon the concession of Villali, the motion to dismiss the fourth cause of action is **GRANTED** and the claim is dismissed without leave to amend.

### E.    Fifth Cause of Action: PAGA

Villali's final cause of action, against both Barner and Chep, is for a violation of California's Private Attorney General Act, pursuant to Cal. Labor Code §§ 201, 202, 203, 226, 286, 288, 558, 558.1, 1174, 1174.5, 1193.6, 1194, 2802, 2698, *et seq.*  (Doc. 1-1 at 16.)

California adopted PAGA to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies."  *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013).  PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code§ 2699(a).  "Recovery of civil penalties under the act requires proof of a Labor Code violation…." *Arias v. Superior Court*, 46 Cal.4th 969, 987 (2009) (citing Lab. Code, § 2699(a), (f)).

Defendants argue Villali fails to state a claim against Barner because a claim under PAGA "can only be brought against Plaintiff's employer."  (Doc. 5 at 14.)  In addition, Defendant assert that Villali's PAGA claim fails—against both Defendants—because:

> (1) he has not alleged that he satisfied the administrative requirement that he provide notice to the California Labor and Workforce Development Agency ("LWDA") before filing this claim, and (2) he fails to plead that could establish that Defendants committed the underlying Labor Code violations referenced by Plaintiff.

16

1    (*Id.*)  Again, Villali does not address the arguments raised by Defendants with any specificity.  (*See*

2    *generally* Doc. 6 at 3-4.)

3                            1.      Administrative exhaustion

4            To claim PAGA penalties, a plaintiff must exhaust the administrative procedures set out in

5    Labor Code § 2699.3, which includes giving written notice to the California Labor and Workforce

6    Development Agency and the defendants.  *Caliber*, 134 Cal. App. 4th at 375-76; Cal. Lab. Code §

7    2699.3(a)(1).  The notice to the LWDA and the employer must identify the specific provisions of the

8    labor code alleged to have been violated, including the "facts and theories" of the claims.  Cal. Lab.

9    Code § 2699.3(a); *Archila v. KFC U.S. Properties, Inc*., 420 Fed. App'x. 667 (9th Cir. 2011).  After

10   the LWDA responds that it will not prosecute the action or fails to respond to the notice with sixty

11   days, a plaintiff may file suit. *Id.* § 2699.3(a)(2)(A).

12           A court may dismiss PAGA causes of action for failure to exhaust the required administrative

13   remedies.  *See Gomez v. J. Jacobo Farm Labor Contr.*, 334 F.R.D. 234, 272 (E.D. Cal. 2019) ("district

14   courts in California have held that failure to exhaust administrative remedies under PAGA justifies

15   dismissing PAGA claims"); *see also Varsam v. Laboratory Corp. of Am*, 120 F. Supp. 3d 1173, 1183

16   (S.D. Cal. 2015) (dismissing PAGA claims for failure to exhaust administrative remedies); *see also*

17   *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007) ("Individuals who

18   bring claims under PAGA must comply with the administrative procedures set forth in Labor Code §

19   2699.3.").

20           To plead compliance with PAGA's administrative exhaustion requirements, a plaintiff should

21   identify when he notified the LWDA about the alleged violations, (2) what, if any, response was

22   received from the LWDA, and (3) how long he waited prior to filing a civil action.  *Varsam*, 120 F.

23   Supp. 3d at 1182-1183; *see also Kemp v. Int'l Bus. Machines Corp*., 2010 WL 4698490, at *3 (N.D.

24   Cal. Nov. 8, 2010)).  Because Villali has not provided any of this information— either in his

25   complaint or the opposition to the motion to dismiss— and it is clear he failed to comply with the

26   administrative exhaustion requirements of PAGA.  Accordingly, Defendants' motion to dismiss the

27   PAGA claim is **GRANTED**.

28   ///

                                                      17

1

          2.       Remaining arguments

2

       Because dismissal of the fifth cause of action for failure to exhaust administrative remedies is

3 appropriate, the Court declines to address Defendants' remaining arguments related to the viability of

4 the PAGA claim against Barner and Chep.

5 **IV.    Remand to State Court**

6        Villali asserts that "if the Court finds that Plaintiff's complaint sufficiently pleds (sic) at least

7 one cause of action against Barner, then this Court must transfer this case back to the Kern County

8 Superior Court for lack of federal diversity jurisdiction."  (Doc. 6 at 5, emphasis omitted.)  According

9 to Villali, "Defendants are misleading this court in order to forum shop and require federal court action

10 in this case…."  (*Id.*)  Because Villali failed to allege facts sufficient to support any claim against

11 Barner, the Court will not address the issue of jurisdiction or remand the action to the state court.[3]

12 **V.    Leave to Amend**

13        Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely

14 given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

15 decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122,

16 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted).  When dismissing a

17 complaint for failure to state a claim, "a district court should grant leave to amend even if no request to

18 amend the pleading was made, unless it determines that the pleading could not possibly be cured by

19 the allegation of other facts."  *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to

20 amend generally shall be denied only if allowing amendment would unduly prejudice the opposing

21 party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v.*

22 *BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

23        Villali requests that if the motion to dismiss is granted, then he be granted leave to amend.

24 (Doc. 6 at 5.)  Given the lack of factual allegations in the complaint, amendment would allow Villali

25 to clarify the terms of his alleged oral employment contract, the basis of his claims—and the remedy

26 available— under the UCL. On the other hand, Villali acknowledges his claim for failure to

27

28 [3] Indeed, Villali did not file a motion to remand, though he now indirectly challenges Defendants' prior assertion that Barner was fraudulently joined as a defendant.  (*See* Doc. 1 at 4.)

investigate should not be an independent cause of action and leave to amend the claim will be denied. In addition, it does not appear the deficiencies of the claims against Barner may be cured by the pleading of additional facts.  Similarly, given Villali's failure to address the exhaustion issue related to the PAGA claims in his opposition to the motion to dismiss, the Court finds leave to amend is not appropriate for the fifth cause of action.  Therefore, leave to amend will be limited to the claims as stated against Chep.  Villali will be given **one opportunity** to allege facts sufficient to support his claims against Chep for breach of oral contract and the UCL.

**V.    Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.    Defendants' motion to dismiss (Doc. 5) is **GRANTED**.

2.    The first cause of action for wrongful termination, to the extent it is stated against Barner, is **DISMISSED** without leave to amend.

3.    The second cause of action for breach of contract is **DISMISSED** with leave to amend.

4.    The third cause of action for a violation of the Unfair Competition Law under Cal. Bus. & Prof. Code § 17200 is **DISMISSED** without leave to amend as to defendant Barner, and with leave to amend as to defendant Chep only.

5.    The fourth cause of action for failure to investigate is **DISMISSED** without leave to amend.

6.    The fifth cause of action under PAGA is **DISMISSED** without leave to amend for failure to exhaust the administrative procedures.

7.    Defendant Barner is **DISMISSED** as a defendant in this action.

8.    The Clerk of Court is directed to update the docket and terminate Kenneith Barner as a defendant.

9.    Plaintiff **SHALL** file any First Amended Complaint within 45 days of the date of service of this order.

///
///
///

1   **If Plaintiff fails to file any amended complaint, the Complaint (Doc. 1-1) shall be deemed**
2   **the operative pleading, and the action will proceed on the first cause of action as stated**
3   **against defendant Chep only.**
4
5   IT IS SO ORDERED.
6
    Dated:   **August 12, 2022**
7                                                          UNITED STATES DISTRICT JUDGE
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28